**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ANDREW REED,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **Case No. 11 C 6387** |
| | ) | |
| **CHANCE JONES, Warden,**[1] | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Andrew Reed was convicted of first-degree murder and aggravated battery with a firearm following a bench trial in the Circuit Court of Cook County. He was sentenced to fifty-six years in prison and is currently serving that sentence at Illinois River Correctional Center. Reed has filed pro se habeas corpus petitions under 28 U.S.C. § 2254. Liberally construed, the initial and supplemental petitions assert seven claims for relief: (1) trial counsel rendered ineffective assistance by failing to file a pretrial motion to quash arrest; (2) trial counsel rendered ineffective assistance by stipulating to the results of gun residue testing on Reed's hands; (3) trial counsel rendered ineffective assistance by withdrawing a pretrial motion to suppress Reed's statement; (4) trial counsel rendered ineffective assistance relating to the evidentiary use of a recovered sweatshirt; (5) the state courts erred by denying a postconviction motion for a DNA

---

[1] Chance Jones is currently the warden of the correctional facility in which Reed is incarcerated. The Court has therefore substituted Jones as the appropriate respondent according to Fed. R. Civ. P. 25(d).

database search pursuant to 725 Ill. Comp. Stat. 5/116-5; (6) the prosecution violated

due process by withholding evidence related to a recovered gun; and (7) the

prosecution violated due process by destroying possibly material evidence.  *See*

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation and emphasis omitted) ("[A]

document filed pro se is 'to be liberally construed.'").

　　　Reed's case was reassigned to the undersigned judge in March 2024.  All told,

the case has been pending before the Court for over thirteen years.  For most of that

time, proceedings were stayed while Reed attempted to exhaust certain of his claims in

state court.  Following the completion of that process, Reed filed a supplemental

habeas corpus petition.[2]  The case is now fully briefed and is before the Court for

determination.  For the following reasons, the Court denies Reed's petitions.

## Background

　　　The Court takes the relevant facts from the decisions of the state appellate court,

which are presumed correct under 28 U.S.C. § 2254(e)(1).  Around midnight on

September 3, 2003, a man in a sweatshirt fired a gun at a group of people sitting on a

porch, killing one person and wounding another.  One of the eyewitnesses to the

shooting identified Andrew Reed as the gunman and directed an officer to Reed's

mother's address.  After speaking with Reed's mother, the officer then used the caller ID

---

[2] Although Reed refers to this new petition as an "amended petition," the petition does
not include the claims raised in his initial petition.  Yet it is clear Reed intended
supplement the original petition rather than replace it.  See Amendment Petition for a
Writ of Habeas Corpus with Additional Grounds of Habeas Corpus ¶ 4 (requesting leave
to file "additional grounds" for habeas corpus).  The Court thus construes the new
petition to be a supplemental petition, as it adds claims to the original petition instead of
superseding it.  *See Newell v. Hanks*, 283 F.3d 827, 834 (7th Cir. 2002) (noting an
"amended petition . . . supersedes" the original petition).

on her phone to identify Reed's address. Officers surrounded Reed's residence and then arrested him as he attempted to escape out the back door. The officers then entered the residence without a search or arrest warrant, recovering a gun and sweatshirt on the dining room table.

While in custody, Reed orally confessed to an assistant state's attorney. He stated he had committed the shooting because he believed the individuals on the porch were responsible for breaking into his brother-in-law's house. This oral statement was never memorialized in writing.

## A.     Direct review

In February 2004, defense counsel filed a pretrial motion to suppress Reed's statement as improperly obtained. Defense counsel withdrew this motion at a pretrial hearing in April, noting that counsel had discussed the issue with Reed. Defense counsel was successful in moving to suppress the recovered gun and sweatshirt as fruits of an illegal search, preventing the prosecution from using the sweatshirt and gun as evidence at trial.

Reed was tried via a bench trial on June 20, 2006. The prosecution relied on the testimony of two eyewitnesses, who testified they recognized Reed based on the gunman's gait and sweatshirt, and two witnesses to Reed's oral confession. The trial court found Reed guilty of first-degree murder and aggravated battery with a firearm and sentenced him to fifty-six years in prison.

On direct appeal, Reed's appellate counsel moved to withdraw, concluding that any claims Reed could make lacked arguable merit. Reed filed a response, arguing that his trial counsel was ineffective for withdrawing the pretrial motion to suppress his

statement.  The appellate court granted counsel's motion to withdraw from the appeal and affirmed the trial court's conviction.  Reed did not file a petition for leave to appeal (PLA) to the Illinois Supreme Court.  The thirty-five-day window to file a PLA expired on April 4, 2008.

**B.    Collateral review**

**1.    Initial postconviction petition**

On August 27, 2008, Reed filed a pro se postconviction petition in state court. *See* 725 Ill. Comp. Stat. 5/122-1.  As he had on direct appeal, Reed argued that his trial counsel was ineffective for withdrawing the motion to suppress.  The trial court dismissed the petition, finding it was barred by res judicata as Reed had previously raised this claim during direct review.  Reed then moved to amend his petition, claiming that trial counsel was also ineffective for (a) stipulating to the results of the gun residue test on his hands, and (b) failing to file a motion to quash arrest.  The trial court denied Reed's motion to amend.

Reed appealed, and his appellate counsel moved to withdraw based on the lack of arguably meritorious arguments.  The appellate court granted the motion to withdraw and affirmed the trial court's dismissal of the petition.  Reed then filed a PLA to the Illinois Supreme Court, which that court denied on January 26, 2011.

**2.    Successive postconviction petition**

On November 23, 2010, Reed attempted to file another postconviction petition in Illinois state court, claiming that his trial counsel was ineffective for:  (a) failing to object to trial testimony identifying Reed as wearing a sweatshirt, (b) failing to present evidence that the gunshot residue test on the recovered sweatshirt was inconclusive,

and (c) failing to call forensic science expert witnesses.  Illinois's Post-Conviction Hearing Act allows a petitioner to file only one postconviction petition as a matter of right.  725 Ill. Comp. Stat. 5/122-1(f).  To file any subsequent, successive postconviction petitions, a petitioner must first obtain leave of court.  *Id.*  A trial court grants leave only if the petitioner shows cause for failing to bring the claim in the first petition and prejudice that would result if the claim is not heard, or actual innocence.  *Id.*; *People v. Robinson*, 2020 IL 123849, ¶¶ 42–44, 181 N.E.3d 37, 50–51.  The trial court denied Reed's motion for leave to file, finding that he had failed to show cause and prejudice or actual innocence.  The appellate court affirmed the denial, and the Illinois Supreme Court denied Reed's PLA on September 26, 2012.

### 3. Initial federal habeas petition

While his successive postconviction petition was pending on appeal, Reed timely filed a federal habeas corpus petition on August 30, 2011, arguing that his trial counsel was ineffective for:  (1) failing to file a pretrial motion to quash his arrest, (2) stipulating to the results of the gun residue test on his hands, and (3) withdrawing the motion to suppress his statement.  Reed also noted in his petition that he was currently pursuing a successive postconviction petition in state court based on actual innocence.

On September 30, 2011, Reed moved to stay his federal habeas proceedings until his state successive postconviction proceedings concluded.  Judge Joan Gottschall, to whom the case was then assigned, granted the motion on December 14, 2011, staying the federal proceedings.

In October 2012, Judge Gottschall lifted the stay after learning that Reed's state court proceedings on his successive postconviction petition had concluded.  Reed again

moved to stay federal habeas proceedings on May 6, 2013, as he wished to pursue further state remedies related to DNA testing under 725 Ill. Comp. Stat. 5/116-3. Judge Gottschall granted the stay on May 8, 2013.

### 4. Subsequent state proceedings

Reed moved the state trial court for DNA testing of the recovered sweatshirt on February 6, 2013, pursuant to 725 Ill. Comp. Stat. 5/116-3. The state trial court granted the motion, and Reed received the DNA results on August 12, 2014. The results were essentially inconclusive—Reed "could not be excluded as a possible contributor to the DNA" on the sweatshirt. Answer to Suppl. Habeas Corpus Pet., Ex. 3 at 23.

On June 24, 2015, Reed moved to have the DNA profile from the sweatshirt run through a DNA database search pursuant to 725 Ill. Comp. Stat. 5/116-5. The prosecution responded that the type of DNA profile produced by the sweatshirt could not be entered into the DNA database. The trial court denied Reed's motion, and the appellate court affirmed. The Illinois Supreme Court denied Reed's PLA on March 21, 2018.

While Reed was appealing his DNA database motion, he moved to file another successive postconviction petition in state court on October 9, 2015, arguing: (a) the prosecution violated his due process rights by failing to disclose forensic expert discussions concerning the removal of a blood spot on the recovered gun, and (b) the sweatshirt DNA report and a newly acquired affidavit from eyewitness Lamar Wilmington established actual innocence. The trial court denied leave to file, concluding that Reed had failed to show cause and prejudice and that the new evidence did not establish actual innocence. The appellate court affirmed the denial, and the Illinois

Supreme Court denied Reed's PLA on September 26, 2018.

Reed moved to file yet another successive postconviction petition on December 8, 2020, arguing:  (a) the prosecution violated due process by destroying potentially material evidence by removing the blood spot from the recovered gun without testing it, and (b) the affidavits from forensic expert witnesses describing the testing procedures on the gun established his actual innocence.  As with his previous successive petitions, the trial court denied leave to file, concluding that Reed had failed to show cause and prejudice and the affidavits did not support actual innocence.  Once again, the appellate court affirmed the denial.  The Illinois Supreme Court denied Reed's PLA on September 27, 2023.

### 5.      Current habeas proceedings

After this roughly ten-year excursion into state court, Reed moved to lift the stay in federal court on October 23, 2023.  Four days later, Judge Gottschall granted the motion and lifted the stay.  As briefing progressed on the initial petition, Reed moved to amend his petition to add additional claims.  Judge Gottschall granted this motion as well, and Reed filed a supplemental petition on February 20, 2024.  The supplemental petition included four additional claims, each based on a prior state court proceeding. Taken together and construed liberally, the initial and supplemental petitions assert the following claims:

1.  Trial counsel rendered ineffective assistance by failing to file a pretrial motion to quash arrest.

2.  Trial counsel rendered ineffective assistance by stipulating to the results of gun residue testing on Reed's hands.

3.  Trial counsel rendered ineffective assistance by withdrawing a pretrial motion to suppress Reed's statement.

4. Trial counsel rendered ineffective assistance of trial counsel by: (a) failing to object to trial testimony identifying Reed as wearing a sweatshirt, (b) failing to present evidence that the gunshot residue test on the recovered sweatshirt was inconclusive, and (c) failing to call forensic science expert witnesses.

5. The state courts erred when denying Reed's postconviction motion for a DNA database search under 725 Ill. Comp. Stat. 5/116-5.

6. The prosecution violated due process by withholding evidence related to the recovered gun.

7. The prosecution violated due process by destroying potentially material evidence related to the recovered gun.

In March 2024, the case was reassigned to the undersigned judge. Briefing on both the initial and supplemental petitions has been completed, so the Court can now decide Reed's habeas petitions.

## Discussion

### A. Timeliness

First, respondent argues that the supplemental petition's claims, claims 4 through 7, are untimely. For petitioners in custody pursuant to a state court judgment, the Antiterrorism and Effective Death Penalty Act (AEDPA) establishes a one-year limitations period for federal habeas petitions that "shall run from the latest of":

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented

could have been discovered through the exercise of due diligence.
28 U.S.C. § 2244(d)(1).

A "properly filed" state postconviction petition tolls this limitations period for the duration of state postconviction review. 28 U.S.C. § 2244(d)(2). But as the statutory language suggests, the petition must actually be filed in the state court to toll the limitations period. A motion for leave to file a successive postconviction petition does not stop the clock unless leave to file is granted. *Martinez v. Jones*, 556 F.3d 637, 638–39 (7th Cir. 2009) ("[W]here state law requires pre-filing authorization—such as an application for permission to file a successive petition—simply taking steps to fulfill this requirement does not toll the statute of limitations.").

Reed does not allege that any state-created impediments prevented him from filing, nor does he rely on any newly recognized and retroactive constitutional right. Therefore, the Court addresses only whether the additional claims are timely when measured from (1) the date when direct review ended or (2) the date when the factual predicate of the claims could have been discovered through due diligence. *See* 28 U.S.C. § 2244(d)(1)(A), (D). Under either measure, Reed's supplemental claims are untimely.

### 1. When the judgment became final

Under section 2244(d)(1)(A), the one-year time limit for filing a federal habeas petition starts when the petitioner's conviction becomes final. A conviction is final when "the time for pursuing direct review" ends. *Gonzalez v. Thaler*, 565 U.S. 134, 151 (2012). When a petitioner fails to seek review from the state's highest court, the judgment becomes final "when the time for seeking such review expires." *Id.* at 154.

Reed did not file a PLA before the Illinois Supreme Court during direct review. His conviction thus became final once the thirty-five-day period to file a PLA expired: April 4, 2008. Reed then waited until August 27 of that year, 144 days, to file his initial state postconviction petition. His petition was properly filed, entitling him to tolling while the state postconviction proceedings occurred. Tolling ended on January 26, 2011, when the Illinois Supreme Court denied his PLA. *See Lawrence v. Florida*, 549 U.S. 327, 333–34 (2007) (holding that tolling ends once the "state court's postconviction review is complete").

At that point, Reed was left with 221 days—until September 5, 2011—to file a federal habeas corpus petition. This means his initial habeas corpus petition, filed on August 30, 2011, was timely. Yet this petition did not stop the clock for any later-filed claims: only properly filed *state* postconviction petitions result in tolling. *See Duncan v. Walker*, 533 U.S. 167, 181–82 (2001). Nor did Reed's attempt to file his first successive postconviction petition on November 23, 2010 pause the clock in any way. Because it was a successive postconviction petition, Reed had to move for leave to file it. The state courts' denial of leave to file means there never was a properly filed state postconviction petition that would allow tolling of the one-year federal habeas corpus limitations period. *See Martinez*, 556 F.3d at 638–39 ("[T]he second petition tolls the limitations period only if the state court grants permission to file it."). In short, Reed's one-year period to file his habeas corpus petition, measured from the end of direct review, ended on September 5, 2011. His supplemental petition, filed on February 20, 2024, was twelve years too late.

### 2. When the factual predicate of claims became discoverable

Under section 2244(d)(1)(D), the one-year time limit starts to run "when the [petitioner] knows (or through diligence could discover) the important facts," not when the facts were "actually discovered" by the petitioner. *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000). The clock starts on the earlier of two dates: when the petitioner has "subjective knowledge of the important facts," or "at the time a reasonable person would have discovered those facts." *Villanueva v. Anglin*, 719 F.3d 769, 774 (7th Cir. 2013).

As noted above, Reed asserted all of the supplemental claims in motions to file successive state court postconviction petitions. It stands to reason that Reed at least knew the important facts underlying the claims at the point in time when he sought leave to file those claims in state court.

Even if the Court assumes that the dates of Reed's various motions for leave to file were the earliest possible dates a reasonable person would have discovered the factual predicate of his supplemental claims, all of the claims would be time-barred. Reed's last attempt to file a successive postconviction petition began on December 8, 2020. Because motions to file postconviction petitions are not "properly filed" petitions (for purposes of tolling) unless granted, the filing of this motion did not toll the federal limitations period. *See Martinez*, 556 F.3d at 638–39. Reed thus had one year from the motion date—until December 8, 2021—to file a federal habeas petition based on the claims raised in his last state postconviction petition. But Reed did not file his supplemental petition until February 20, 2024, which makes it more than two years too late. And that is the case if one uses the filing date of the *last* successive postconviction

11

petition—the supplemental claims asserted in earlier state proceedings are even more untimely than this.

### 3.    Relation back

Reed argues his supplemental petition's claims should relate back to the date of his original petition.  The Federal Rules of Civil Procedure allow a petitioner to amend or supplement the original habeas petition.  Fed. R. Civ. P. 15; 28 U.S.C. § 2242 (allowing habeas petitions to be "amended or supplemented as provided in the rules of procedure applicable to civil actions").  Under Rule 15, a new petition can avoid untimeliness under AEDPA's one-year limitation by having claims that "relate back" to a timely original petition.  *See Mayle v. Felix*, 545 U.S. 644, 655 (2005).  A claim relates back to the date of the original petition if it "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  *Id.* (quoting Fed R. Civ. P. 15(c)(2)).  This means the new claim must arise "from the same core facts as the timely claims."  *Id.* at 657.

Claims do not relate back, however, when they assert "a new ground for relief supported by facts that differ in both time and type from those the original [petition] set forth."  *Id.* at 650.  That said, claims do not have to be identical to relate back.  An amendment that "invokes a legal theory not suggested by the original [petition] and relies on facts not originally asserted" may still relate back if "the original and amended petitions state claims that are tied to a common core of operative facts."  *Coleman v. United States*, 79 F.4th 822, 829 (7th Cir. 2023) (quoting *Mayle*, 545 U.S. at 659, 664).  The key inquiry is whether the respondent was on notice of the potential for the new claim based on the original petition's claims.  "Even 'significant' changes" to a petition

"can relate back so long as the defendant had fair notice of the substance of the new allegations from the outset." *Id.* at 829 (citation omitted).

Construed liberally, Reed's original habeas corpus petition included three claims: (1) trial counsel rendered ineffective assistance by failing to file a pretrial motion to quash arrest; (2) trial counsel rendered ineffective assistance by stipulating to the gun residue test results on Reed's hands; and (3) trial counsel rendered ineffective assistance by withdrawing the pretrial motion to suppress Reed's statement. None of Reed's later claims relate back to these original claims, because all of the later claims are based on a different core of facts than the original claims. The closest Reed gets is claim 4, the first claim in the supplemental petition, in which he contends that trial counsel was ineffective for failing to (a) object to trial testimony identifying Reed as wearing a sweatshirt, (b) present evidence that the gunshot residue test on the recovered sweatshirt was inconclusive, and (c) call forensic science expert witnesses.

But although the original claims and this supplemental fourth claim all assert ineffective assistance of trial counsel, the original claims have different factual bases from the supplemental claim. *See Thompson v. Larson*, No. 18 C 4387, 2021 WL 76829, at *6 (N.D. Ill. Jan. 8, 2021) (collecting cases stating that when "[t]he theories of ineffectiveness are entirely new," the "new untimely claims cannot fit inside the old timely petition"). Thus respondent was not fairly on notice that Reed would be challenging his counsel's ineffective approach to the sweatshirt evidence or failure to use experts based on the original petition.

Claims 5, 6, and 7 are even further from the original petition's claims. Specifically, these supplemental claims—which challenge state DNA procedures and

contend the prosecution withheld and destroyed possibly material evidence—in no way relate to the original petition's ineffective assistance of counsel claims.

Reed responds that his original petition did not just include three ineffective assistance of counsel claims but also made a fourth unexhausted actual innocence claim to which his supplemental petition relates back. A district court cannot grant habeas relief to a petitioner in state custody unless the petitioner exhausted available state court remedies. 28 U.S.C. § 2254(b)(1)(A). Usually, this means a petitioner "must give the state courts an opportunity to act" on the claims "before present[ing] those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 843 (1999).

Exhausting claims in state court, however, can take years. Although properly filed postconviction petitions toll AEDPA's one-year statute of limitations, a petitioner moving to file a successive postconviction petition will not know whether the proposed successive petition is properly filed until the state courts' motion review process concludes. This means that a petitioner like Reed who is attempting to exhaust claims via a successive state postconviction petition may run out AEDPA's limitations clock before he is able to file in federal court.

When a petitioner's good faith attempt to fully exhaust claims would cause those claims to be untimely under AEDPA, a federal district court may allow the petitioner to assert both exhausted and unexhausted claims in a "mixed" federal habeas corpus petition to ensure timely filing. *See Rhines v. Weber*, 544 U.S. 269, 277–78 (2005); *Pace v. DiGuglielmo*, 544 U.S. 408, 416–17 (2005). The district court then stays the federal habeas corpus petition while the state proceedings on the unexhausted claims

progress. *Rhines*, 544 U.S. at 277–78; *Pace*, 544 U.S. at 416–17. Once those state proceedings conclude, a petitioner can then move to lift the stay to have the now fully exhausted habeas corpus petition evaluated by the federal court. *Rhines*, 544 U.S. at 276–77. Still, a district court grants a stay only if it determines there was "good cause" for the petitioner's failure to exhaust claims first in state court. *Id.* at 277. "[R]easonable confusion" as to whether a state postconviction petition will be "properly filed" is one example of good cause for stay. *Pace*, 544 U.S. at 416–17.

Reed emphasizes that his original petition was a mixed petition, as he noted in the "collateral proceedings" section that he currently had an "actual innocence petition" pending in state appellate court. Pet. for Writ of Habeas Corpus at 4. Reed did not, however, put this actual innocence claim in the "petitioner's claims" section of his federal habeas petition. Further, Reed confirmed in his original petition that "all grounds raised in this petition [had] been presented to the highest court" of the state. *Id.* at 6. That, of course, was not true at that point for the actual innocence claim. These circumstances indicate Reed did not actually file a mixed petition that included his unexhausted claims.

This raises a question: why did the previously assigned judge grant Reed's motion to stay federal habeas proceedings if there were no unexhausted claims? Reed's motion unambiguously argued his original petition included "unexhausted claims" that were "alleged simultaneously with fully exhausted claims," making his petition a mixed petition that should be stayed until state proceedings concluded. Mot. to Hold Habeas Proceedings in Abeyance at 1. Respondent did not oppose this motion. In fact, respondent agreed that federal habeas proceedings should be stayed "pending

15

conclusions of petitioner's state postconviction proceedings."  Resp. to Petitioner's Mot. to Stay Habeas Proceedings at 2.  It appears, at least on its face, that the parties and the previously assigned judge had *some* unexhausted claim in mind when granting the stay.

This apparent confusion traces back to respondent's initial misimpression that Reed's entire original petition was untimely.  After the initial stay was lifted, respondent filed a (later withdrawn) motion to dismiss arguing that Reed's original petition was not filed within one-year of the end of direct review.  Respondent believed at that point that Reed had begun his initial state postconviction proceedings on November 20, 2008.  This is incorrect—Reed mailed his initial state postconviction petition on August 27, 2008.  *See Jones v. Bertrand*, 171 F.3d 499, 500–02 (7th Cir. 1999) (holding a pro se petitioner's postconviction petition "is deemed filed when given to the proper prison authorities" for mailing).

Under respondent's miscalculation, Reed's original federal habeas corpus petition—filed on August 30, 2011—would have been untimely by about 80 days absent further tolling.  This would have made Reed's first successive postconviction petition, which was pending on appeal when Reed filed for federal habeas, essential for tolling purposes.  If Reed succeeded in convincing a state court to grant him leave to file the successive postconviction petition that he attempted to file on November 23, 2010, the pendency of that petition would have tolled AEDPA's one-year time limit and prevented the federal habeas petition from being untimely.  Respondent, believing this to be the case, thus agreed that a stay should be granted not because the federal habeas petition included unexhausted claims, but instead to determine whether the entire federal

petition was timely.  *See* Resp. to Petitioner's Mot. to Stay Habeas Proceedings at 2 (arguing that the Court should stay the petition because "the outcome of petitioner's state postconviction proceedings will affect the timeliness of the instant petition").

What the Court is left with, then, is a motion to stay that was based on Reed's belief that he filed a mixed petition, a response to that motion that was based on respondent's mistaken belief that it would help determine whether the original petition was timely, and a court order summarily staying federal proceedings.  The Court, under these circumstances, finds it best to liberally construe Reed's petition as including the unexhausted actual innocence claim described in the petition.  Reed's motion expressly stated that he was moving for a stay in order to exhaust the unexhausted claims in his petition, and the Court granted that stay.  To find, thirteen years after the fact, that Reed did not include any unexhausted claims in his petition simply because he put his actual innocence claim in the wrong section of the petition would be unfair, and inconsistent with the liberal standard under which courts read pro se filings.  *Cf. Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998) ("The essence of liberal construction is to give a pro se petitioner a break when, although [the petitioner] stumbles on a technicality, [the] pleading is otherwise understandable.").

Still, a conclusion that Reed preserved an unexhausted actual innocence claim in his original petition does not automatically mean that his supplemental claims relate back to that claim.  Reed failed to describe the facts underlying his actual innocence claim throughout the briefing on his original petition.  Specifically, nowhere in his original petition, motion to stay, or initial reply did Reed describe the facts that support his actual innocence claim.  A mere statement in his petition that Reed was attempting to exhaust

17

an actual innocence claim does not, as Reed appears to contend, preserve all claims ranging from ineffective assistance of counsel to due process violations simply because those issues might indicate actual innocence. As stated above, a claim relates back only if the new and old claims share a "common core of operative facts." *Coleman*, 79 F.4th at 829 (quoting *Mayle*, 545 U.S. at 664). Although a court must liberally construe a pro se petition, a court cannot liberally construe facts that are not provided at all. Therefore, even if one assumes that Reed preserved an unexhausted actual innocence claim, the claim was not described in enough factual detail to allow relation back of Reed's later supplemental claims.

### 4. Equitable tolling

Next, Reed argues that he is entitled to equitable tolling. To establish equitable tolling of AEDPA's statute of limitations, Reed must show "'(1) that he had been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citation omitted). Equitable tolling analysis is "highly fact-dependent" and requires courts to employ "flexible standards on a case-by-case basis." *Socha v. Boughton*, 763 F.3d 674, 684 (7th Cir. 2014). "[T]olling is rare"—it is "reserved for extraordinary circumstances far beyond the litigant's control that prevented timely filing." *Id.* "Mistakes of law or ignorance of proper legal procedures are not extraordinary circumstances warranting" equitable tolling. *Arrieta v. Battaglia*, 461 F.3d 861, 867 (7th Cir. 2006).

Even assuming Reed has diligently pursued his rights, he has not shown an extraordinary circumstance that prevented him from timely filing. Reed is correct that

claims 6 and 7, which argue the prosecution withheld and destroyed possibly material evidence, could not have been brought initially due to the factual predicates of those claims not being known to him.  Yet, as stated above, Reed necessarily learned of the factual bases of these claims by the time he sought leave to file his last state postconviction petition:  December 8, 2020.  Reed has not pointed to any extraordinary circumstance that prevented him from supplementing or amending his federal habeas corpus petition when he learned of the underlying factual bases of his claims.  His failure to file anything more in federal court before February 2024 is not excused on any legally viable basis.

Nor do the Court's prior stay orders excuse Reed's failure to file his additional claims sooner.  Reed notes that, pursuant to the Court's stay orders, he was only required to inform the Court of the conclusion of state court proceedings "within sixty-days."  Reply Pet. to Suppl. Pet. at 15.  Yet none of the Court's stay orders gave Reed permission to pursue over a decade of state court postconviction relief—without regard to the limitations period—before returning to federal court.  On May 8, 2013, the Court granted the final stay order to allow Reed to pursue a specific state DNA procedure. The Court specifically instructed Reed to "notify the [C]ourt at the conclusion of his state proceedings under 725 Ill. Comp. Stat. 5/116-3."  Minute Entry of May 8, 2013, Dkt. No. 36.  But despite Reed receiving DNA results pursuant to 725 Ill. Comp. Stat. 5/116-3 in August 2014, he did not notify the Court.  Instead, Reed proceeded to pursue further state court remedies, first by moving for a further DNA analysis under 725 Ill. Comp. Stat. 5/116-5, and then by moving to file two more state postconviction petitions.  Not until October 2023 did Reed move to lift the federal stay.  Reed's misreading of the

Court's stay order is not an extraordinary circumstance justifying equitable tolling. *See Arrieta*, 461 F.3d at 867.

### 5. Actual innocence

Finally, Reed argues that his supplemental petition's untimeliness should be excused based on actual innocence. A habeas corpus petitioner's failure to raise claims within AEDPA's statute of limitations may be excused if the petitioner shows actual innocence. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). "[T]enable actual-innocence" showings are "rare." *Id.*; *Schlup v. Delo*, 513 U.S. 298, 324 (1995) ("[I]n the vast majority of cases, claims of actual innocence are rarely successful."). A petitioner must provide "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. This evidence must then "show that it is more likely than not that no reasonable juror would have convicted" the petitioner. *McQuiggin*, 569 U.S. at 386.

With the new evidence in tow, a court "conduct[s] a comprehensive assessment that takes into account any reliable evidence probative of petitioner's innocence or guilt." *Arnold v. Dittmann*, 901 F.3d 830, 837 (7th Cir. 2018). Delay in pursuing a claim of actual innocence does not bar the claim. *Id.* Still, "[u]nexplained delay in presenting new evidence" may impact the evidence's credibility. *McQuiggin*, 569 U.S. at 385; *Gladney v. Pollard*, 799 F.3d 889, 898 (7th Cir. 2015) (quoting *McQuiggin*, 569 U.S. at 385) ("[A] delayed petition 'should seriously undermine the credibility of the actual-innocence claim.'").

Reed argues that three new pieces of evidence illustrate his actual innocence: (1) a DNA test of the recovered sweatshirt that yielded inconclusive results, (2) the affidavits of two forensic scientists who tested the recovered gun for evidence, and (3) a sworn affidavit from eyewitness Lamar Wilmington stating that Reed did not commit the shooting. The evidence, when considered against the prosecution's case for guilt, does not show Reed's actual innocence under the applicable standard.

First, Reed contends that the DNA test of the recovered sweatshirt shows he "could not have worn this sweatshirt." Reply Pet. to Suppl. Pet. at 17. This misinterprets the results. Although the test did not match the sweatshirt to Reed, it did not exonerate him. The DNA report states that Reed "cannot be excluded as a possible contributor of DNA" on the sweatshirt and that "no conclusions can be reached regarding [Reed] as a possible contributor of DNA." Answer to Suppl. Habeas Corpus Pet., Ex. 3 at 23. If anything, the report confirms that Reed *could have* worn the sweatshirt (that's what "possible contributor" means), which does not assist his actual innocence claim.

Second, Reed argues that the affidavits of two forensic scientists detailing their failure to test a blood spot on the recovered gun supports his actual innocence. He contends that testing the blood spot, which likely belonged to the shooter based on its location on the gun, would have dispositively shown he was not the shooter. Yet the affidavits do not state that testing would have exonerated Reed—indeed, they do not even suggest the blood spot could have been accurately tested at all. Rather, the affidavits simply confirm the blood spot was deemed irrelevant for testing and that it needed to be removed to make the "firearm safe to handle for examination." Reply Pet.

to Suppl. Pet. at 51. Like the sweatshirt DNA test results, these affidavits do nothing to exonerate Reed.

Third, Reed states that the newly acquired affidavit of Lamar Wilmington shows actual innocence. Unlike the above evidence, Wilmington's affidavit testifying that Reed was not the shooter undoubtedly supports an actual innocence claim. Yet Reed did not obtain this affidavit until April 2012, eight years after the shooting. He also did not file the affidavit to support an actual innocence claim in a postconviction petition until more than three years after that, in October 2015. Both the delay in obtaining the affidavit and the delay in presenting the affidavit to a court once obtained hamper the affidavit's credibility. *See McQuiggin*, 569 U.S. at 385; *Gladney*, 799 F.3d at 898. Moreover, even if the Court were to fully credit this affidavit, it does not outweigh the testimony of the two other eyewitnesses who identified Reed as the shooter, nor does it undercut the testimony regarding Reed's oral confession. When assessing all of the evidence indicating both innocence and guilt, the new evidence does not show it is more likely than not that no reasonable juror would convict Reed.

Absent relation back, tolling, or a tenable actual innocence showing, Reed's supplemental petition is untimely and must be dismissed on that basis. But even if the Court were to assume the supplemental petition was timely, the claims presented would be procedurally defaulted or non-cognizable in federal habeas and similarly subject to dismissal.

## B.   Procedural default

Respondent argues that almost all of Reed's claims—claims 1 through 4, 6 and 7—are procedurally defaulted. The procedural default doctrine prevents a federal court

from reviewing the merits of a claim that "a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). There are two "paradigmatic" ways a petitioner can procedurally default a claim. *Clemons v. Pfister*, 845 F.3d 816, 819 (7th Cir. 2017) (citation omitted). First, a default occurs when the petitioner fails to "fairly present" a claim "throughout at least one complete round of state-court review, whether on direct appeal of [the] conviction or in post-conviction proceedings," and "it is clear that those courts would now hold the claim procedurally barred." *Id.* (citation omitted); *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). "This means the petitioner must raise each issue at every level of the state court system—trial, appeal, and in a petition for leave to appeal to the Illinois Supreme Court." *Paape v. Baker*, No. 14 C 250, 2024 WL 2088447, at *4 (N.D. Ill. May 9, 2024) (Kennelly, J.) (citing *O'Sullivan*, 526 U.S. at 845).

Second, procedural default occurs if "the state court rejects a federal claim based on a state procedural rule 'that is both independent of the federal question and adequate to support the judgment.'" *Clemons*, 845 F.3d at 819 (citation omitted). A procedural rule is "independent" of the federal question if the rule is the basis for the judgment, as opposed to the "merits of the federal claim." *Harris v. Reed*, 489 U.S. 255, 260 (1989). A procedural rule is "adequate" if it is "firmly established and regularly followed." *Booker v. Baker*, 74 F.4th 889, 893 (7th Cir. 2023) (quoting *Beard v. Kindler*, 558 U.S. 53, 60 (2009)).

A state court need not expressly describe its reasoning for a ruling to have an independent and adequate state-procedural-rule basis. When the judgment does not specify the grounds for decision, a court "look[s] to the nature of the disposition and the

surrounding circumstances to determine whether the state court relied on an independent and adequate state law ground." *Woods v. Schwartz*, 589 F.3d 368, 375 (7th Cir. 2009). This means a federal court must review "the record the state court was presented with," which includes state court briefs and, if present, an attorney's "motion to withdraw." *Id.*

Two procedural aspects of Illinois's Post-Conviction Hearing Act are relevant in this case. First, the Act "provides a three-stage procedural mechanism for a criminal defendant to challenge [a] conviction or sentence for violations of federal or state constitutional rights." *People v. Knapp*, 2020 IL 124992, ¶ 43, 181 N.E.3d 875, 882 (citing 725 Ill. Comp. Stat. 5/122). The first stage involves a pleading standard: a petitioner "must supply sufficient factual basis to show the allegations in the petition are 'capable of objective or independent corroboration.'" *People v. Allen*, 2015 IL 113135, ¶ 24, 32 N.E.3d 615, 623 (citation omitted). A post-conviction petition is summarily "dismissed as frivolous or patently without merit" at stage one if the petitioner fails to provide any "arguable basis either in law or fact." *Id.* ¶ 25, 32 N.E.3d at 623. The legal adequacy of a pleading is a procedural rule. *See Whyte v. Winkleski*, 34 F.4th 617, 628 (7th Cir. 2022) (holding that an analogous Wisconsin postconviction pleading standard is an independent procedural rule).

Second, the Act allows a petitioner to file only one postconviction petition as a matter of right. 725 Ill. Comp. Stat. 5/122-1(f). "Any claim of substantial denial of constitutional rights not raised in the original or amended petition is waived." *Id.* 5/122-3. To raise a new claim despite this waiver, a petitioner must move for leave of court to file a successive postconviction petition. *Id.* 5/122-1(f). As discussed earlier, a trial

24

court grants leave only if the petitioner shows cause for failing to bring the claim in the first petition and prejudice that would result if the claim is not heard, or actual innocence. *Id.*; *Robinson*, 2020 IL 123849, ¶¶ 42–44, 181 N.E.3d at 50–51. A state court's denial of leave to file is "an adequate and independent state ground precluding federal habeas review." *Thomas v. Williams*, 822 F.3d 378, 385 (7th Cir. 2016).

### 1. Claims 1 and 2 are procedurally defaulted for inadequate pleading

Reed first raised claims 1 and 2 in his attempt to amend his initial postconviction petition in state court. No Illinois court described its exact reasoning for denying these claims. In this scenario, the Court must "look to the nature of the disposition and the surrounding circumstances, including an attorney's "motion to withdraw," to determine whether the state court's judgment rested on an adequate and independent procedural basis. *See Woods*, 589 F.3d at 375.

The motion to withdraw filed by Reed's appellate counsel indicates that the state court's judgment rested on independent and adequate grounds. Counsel repeatedly stated in its motion that Reed failed to abide by Illinois's pleading standard when attempting to amend his petition: "Reed's amended petition is insufficient as a matter of pleading because each of Reed's claims consists only of a conclusory statement," "Reed's conclusory statements are insufficient to survive even the low pleading threshold afforded first-stage post-convictions," "[e]ven under a liberal interpretation, Reed's argument section amounts to nothing more than a list of conclusory statements." State Ct. R., Ex. 11 at 13–14. In accordance with this motion to withdraw, the state appellate court granted the motion and affirmed the district court denial of Reed's initial and amended postconviction petition, concluding there were "no issues of arguable

merit to be asserted in an appeal." *People v. Reed*, No. 03 CR 21971, at 3 (Ill. App. Ct. Sep. 30, 2010). Based on these surrounding circumstances, it is clear the state courts dismissed claims 1 and 2 due to Reed's failure to abide by Illinois's postconviction pleading standard.

On whether this pleading standard is an independent procedural rule, the Court finds *Whyte v. Winkleski* instructive. In *Whyte*, the petitioner argued that the Wisconsin state appellate court's dismissal of his postconviction petition as inadequately pled was a non-independent, merits-based determination. *Whyte*, 34 F.3d at 628. The petitioner asserted that because the pleading standard required a petitioner to "raise facts sufficient to entitle the movant to relief" beyond "conclusory allegations," any determination regarding a pleading's adequacy required a court to evaluate the claims' merits. *Id*. at 622, 628. The Seventh Circuit disagreed, drawing a distinction between looking at the "substance" of a claim and its merits. *Id*. Although the pleading standard required a state court to determine whether a petitioner provided enough facts to support a claim (i.e. enough substance), the standard did not require a state court to actually analyze those facts and make a merits-based judgment. *Id*. Because a state court only needed to look at the substance of a claim to determine whether it was adequately pled, the Seventh Circuit concluded the pleading standard was an independent procedural rule. *Id*.

In this case, Illinois employs a pleading standard analogous to the one employed by Wisconsin in *Whyte*: a petitioner "must supply sufficient factual basis to show the allegations in the petition are 'capable of objective or independent corroboration.'" *Allen*, 2015 IL 113135, ¶ 24, 32 N.E.3d at 623 (citation omitted). To determine whether

26

a petitioner fulfills this pleading standard, a court looks at the facts presented only to determine whether the petition has substance. A court does not address the merits, in that it does not evaluate the factual allegations—it simply determines whether the petitioner has alleged enough facts to plead any claim at all. Therefore, like the pleading standard in *Whyte*, Illinois's pleading standard for postconviction petitions is an independent state procedural rule.

This pleading standard is also an "adequate" rule, as it is "firmly established and regularly followed." *See Booker*, 74 F.4th at 893 (quoting *Beard*, 558 U.S. at 60). Illinois courts, both before and after Reed's amended postconviction petition was denied, have cited and applied this pleading standard as the first stage of postconviction review. *See, e.g.*, *Allen*, 2015 IL 113135, ¶ 24, 32 N.E.3d at 623 (citation omitted) (noting that a petitioner "must supply sufficient factual basis to show the allegations in the petition are 'capable of objective or independent corroboration" to avoid summary dismissal); *People v. Delton*, 227 Ill. 2d 247, 254–55, 882 N.E.2d 516, 520 (2008) (noting that a petitioner "must set forth some facts which can be corroborated and are objective in nature or contain some explanation as to why those facts are absent" to avoid summary dismissal); *People v. Burt*, 205 Ill. 2d 28, 35–36, 792 N.E.2d 1250, 1256 (2001) ("[N]onfactual and nonspecific assertions which merely amount to conclusions are insufficient" to avoid summary dismissal).

Because the pleading standard is an independent and adequate procedural ground, claims 1 and 2 are procedurally defaulted.

### 2. Claim 3 is procedurally defaulted for failure to complete one round of state court review

Reed initially raised claim 3 on direct review, appealing his conviction based on

his trial counsel's withdrawal of the motion to suppress his statement.  Yet Reed did not pursue this claim before the Illinois Supreme Court, as he failed to file a PLA within the thirty-five days allotted.  This means Reed failed to present claim 3 through one complete round of state court review, thus procedurally defaulting the claim.  *See O'Sullivan*, 526 U.S. at 845.

Nor did Reed's later attempt to bring this claim in his initial state postconviction petition remedy this default.  In denying this claim, the state courts found it barred by res judicata, as Reed had already raised the claim on direct appeal.  Although Reed appealed this res judicata ruling all the way up to the Illinois Supreme Court on review of the denial of his postconviction petition, the state courts' refusal to "revisit a claim it has already adjudicated" does not "lift[] a pre-existing procedural default."  *Cone v. Bell*, 556 U.S. 449, 466–67 (2009) (citation omitted); *cf. Cawley v. DeTella*, 71 F.3d 691, 694 n.6 (7th Cir. 1995) (noting that failure to "file a petition for leave to appeal to the Illinois Supreme Court" usually results in procedural default, but a federal court may still review the claim if the "Illinois courts on post-conviction did not invoke waiver or res judicata").

Claim 3 is procedurally defaulted for failure to raise this claim through one complete round of state court review.

### 3.     Claims 4, 6 and 7 are procedurally defaulted for failure to receive leave to file

Reed attempted to bring claims 4, 6, and 7 in successive postconviction petitions.  Reed was denied leave to file each of these petitions, as he could not show the cause and prejudice nor actual innocence required to file a successive postconviction petition in Illinois.  As stated above, denial of leave for successive postconviction petitions is an independent and adequate state procedural ground.  *Thomas*, 822 F.3d at 385.

Because Reed was not granted leave to file claims 4, 6, and 7, they are procedurally defaulted.

## C.    Excuse for the defaults

Reed recognizes that many of his claims are procedurally defaulted, and he asks the Court to excuse the defaults.  "Procedural default may be excused . . . if the petitioner can show both cause for and prejudice from the default, or can demonstrate that the district court's failure to consider the claim would result in a fundamental miscarriage of justice."  *Bolton v. Akpore*, 730 F.3d 685, 696 (7th Cir. 2013) (citing *Dretke v. Haley*, 541 U.S. 386, 393 (2004)).  A petitioner shows cause by pointing to "an objective factor, external to the defense, that impeded the defendant's efforts to raise the claim in an earlier proceeding."  *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013) (citation omitted).  Prejudice requires "an error which so infected the entire trial that the resulting conviction violates due process."  *Id.* (citation omitted).  Finally, a fundamental miscarriage of justice requires a petitioner to show "actual innocen[ce] of the crime" for which the petitioner is imprisoned.  *Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003).

Reed concedes that he cannot show cause and prejudice for his first four claims, and thus he rests his argument for excusing the procedural default of these claims on his claim of actual innocence.  As discussed above, however, Reed has not established actual innocence.  Thus his first four claims are subject to dismissal based on procedural default.

Reed argues that any default on claims 6 and 7—that (a) the prosecution withheld material evidence by not disclosing its failure to test the blood spot on the

recovered gun and (b) the prosecution destroyed potentially material evidence by wiping off the blood spot from the gun without testing it—should be excused for cause and prejudice. Even assuming the prosecution's withholding of information surrounding the gun testing is sufficient cause, Reed has not shown prejudice.

First, for a petitioner to show the prosecution violated due process by withholding evidence, the evidence: (1) "must be favorable to the accused," (2) "must have been suppressed by the government," and (3) "must be material," meaning "there must be 'a reasonable probability that the suppressed evidence would have produced a different verdict.'" *United States v. Morales*, 746 F.3d 310, 314 (7th Cir. 2014) (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)). Reed has not shown that the prosecution's failure to disclose that it did not test the blood spot is material. Although Reed argues that the prosecution withheld notes made by the forensic experts detailing their failure to test the blood spot, it is unclear how these notes would have materially altered the outcome of Reed's trial. All the notes do is explain that the blood spot should be removed to allow safe residue testing of the gun. The notes in no way suggest that Reed could not have owned or used the gun. And even if the notes may have been slightly favorable to Reed in the sense that they possibly could indicate a rushed investigation, this would not have created a reasonable probability that the verdict would have been different had Reed been given access to them. In sum, because the prosecution's withholding of evidence did not violate Reed's due process rights, he has not shown the prejudice required to excuse the procedural default of claim 6.

Second, for the destruction of evidence to violate a habeas corpus petitioner's due process rights, the petitioner must show: (1) the government acted in "bad faith,"

30

(2) "the exculpatory nature of the evidence was apparent before its destruction," and (3) the petitioner "could not obtain the same evidence elsewhere." *United States v. Fletcher*, 634 F.3d 395, 407 (7th Cir. 2011).  Reed does not show that the prosecution or law enforcement acted in bad faith when removing the blood spot.  Although Reed provides affidavits from the two forensic experts who tested the gun, both confirm the blood spot was removed to ensure safe testing.  They do not suggest any nefarious motive in cleaning the gun.

Further, the blood spot on the gun did not have an apparent exculpatory nature. Reed argues the blood spot would have exonerated him because it was stipulated at trial the shooter was at least 120 feet away from the victim, meaning the blood likely belonged to the shooter.  Yet there is no indication how long the blood had been on the gun or whether it was a large enough sample for DNA testing.  Without evidence that the prosecution or law enforcement acted in bad faith when removing the blood spot or that the blood spot had an apparent exculpatory nature, Reed has not shown the prejudice required to excuse his procedural default of claim 7.

D.     **Non-cognizable claims**

With claims 1 through 4, 6, and 7 all procedurally defaulted, only claim 5 is left. In that claim, Reed contends the state court erred in denying his postconviction motion for a DNA database search pursuant to 725 Ill. Comp. Stat. 5/116-5.  Reed properly raised this claim in a separate state proceeding involving postconviction DNA testing, so it is not procedurally defaulted.  Reed concedes, however, that this claim is solely based on state law.  Thus the claim is non-cognizable on federal habeas corpus review.  *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (emphasizing that it is "not the province

of a federal habeas court to reexamine state-court determinations on state law questions").  Claim 5 is subject to dismissal on this basis.[3]

## Conclusion

The Court substitutes Chance Jones as the respondent in this case pursuant to Federal Rule of Civil Procedure 25(d).  For the reasons stated above, the Court denies Reed's petition for a writ of habeas corpus and directs the Clerk to enter judgment stating:  The petition for a writ of habeas corpus is denied.  The Court also declines to issue a certificate of appealability under 28 U.S.C. § 2253(c)(2).  The correctness of the Court's untimeliness, procedural default, and non-cognizable rulings is not fairly debatable.  *See Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

Date:  February 6, 2025

MATTHEW F. KENNELLY
United States District Judge

---

[3] Respondent also argues that any standalone actual innocence claims raised in the petition are non-cognizable as they are independent of any federal constitutional claim. *See Cal v. Garnett*, 991 F.3d 843, 850–51 (7th Cir. 2021) ("[T]he Supreme Court has never held that actual innocence claims, standing alone—separate and apart from any constitutional error—could support habeas relief.").  Because the Court has already concluded that all of Reed's claims are either untimely, procedurally defaulted, or non-cognizable, it does not reach this issue.